[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This appeal from the action of the court of probate, district of Plymouth, denying admittance of the last will and testament of Eugenia M. Cockayne to probate was heard de novo.
The plaintiff/appellant, Ernest J. Cockayne, contends that the will of Eugenia M. Cockayne, dated July 23, 1992, is her valid last will and testament; that, the testatrix was capable at the time of execution of her will, and further, that she was not subjected to undue influence by her son, Ernest J. Cockayne. Further, that the appellant is aggrieved as a potential beneficiary. That the intent of the testatrix in the distribution of her estate will not be carried out.
The court finds that Ernest J. Cockayne has standing to appeal.
After a de novo hearing by the court wherein the parties and their witnesses presented evidence, the court finds by clear and convincing evidence: that the testatrix, Eugenia M. Cockayne, was of sound mind and memory and, that she met the statutory criteria required for the execution of a valid will.
However, the court further finds that at the time of and immediately prior to the execution of her will she was under the improper influence of her son, Ernest, the plaintiff/appellant herein, in the execution of her will dated July 23, 1992.
The facts are: The testatrix consulted with Attorney James Tracy prior to and at the drafting and execution of her will. That Ernest and Bruce were the testatrix's only children, that they had little or no contact with one another after the death of their father; that the testatrix had frequent contact with Bruce CT Page 14548 and his family at their home until Ernest complained that she should spend more time at his home; that, Ernest, interfered several times when Bruce requested of his mother items from her home, (e.g. a desk, guns), or the use of some item, (e.g. a boat, a pickup truck). Further, when Bruce was in a serious difficulty and asked his mother to lend him $20,000.00 she agreed to do so and a repayment schedule was arranged. However, when Bruce was to receive the money his mother told him that Ernest told her not to give Bruce the loan. Therefore, she would not lend him the money.
That the testatrix previously had executed a will after the death of her husband. In this will Bruce and Ernest were to receive equal portions of her estate. That, she subsequently executed another will which was denied admittance as a valid will by the Plymouth Probate Court and which is now on appeal to this court. The testatrix at various times after her husband's death indicated that her two sons would share equally in her estate.
That the will herein involved was executed at Ernest's instigation. He spoke with her about the benefits of a living will. He arranged to have her go to Attorney Tracy. He phoned Attorney Tracy's office for an appoint for his mother, he spoke with the secretary and informed her that the testatrix wanted to execute her will as well as a living will and arranged an appointment. That, he drove the testatrix to and from the attorney's office for the two visits to draft and execute the will. That, Ernest spoke with the testatrix of executing a living will but no mention was made of a new will. That, payment to the attorney for his services were made by the testatrix by check with a notation on it that the payment was for a living will and power of attorney.
Further, that the testatrix had never indicated that she would not divide her estate equally between her sons. On the contrary, she repeatedly indicated that it was her intention to treat them equally in her will. That, Bruce, as her son was a natural object of her bounty.
That, the testatrix, did not intend to alter her long held intention, as expressed by her at various times, to leave her estate to both sons, equally.
That, the execution of the will, herein mentioned, was at the instigation and prompting of her son Ernest with her belief, as testified by Ernest, that she was going to execute a living will. CT Page 14549
That, the power of attorney was also executed by the testatrix when Attorney Tracy explained to her the benefits of such a document in connection with the living will.
Although there was testimony by Ernest as to the testatrix's ability to determine what she wanted and stick with it, when she informed Attorney Tracy she wanted a living will she made no mention of a power of attorney. Yet when he explained to her the purposes served by a power of attorney in conjunction with the living will she went right along with it.
Thus, it does appear that the testatrix was susceptible to suggestion, and that Ernest used this weakness of hers to have her execute her will benefitting [benefiting] himself and his son.
The idea of executing a new will changing the equal division of her assets, as expressed in her first will, was not ever expressed by her to anyone. On the other hand, she did express an interest in executing a living will and agreed to have Ernest arrange with an attorney to accomplish this. The execution of a new will was Ernest's idea and arranged by him when he telephoned Attorney Tracy's secretary for an appointment to execute a will and living will.
Therefore, the will executed by the testatrix on July 23, 1992 was not her idea, nor did it reflect her wishes or carry out her purposes as expressed by her many times.
Therefore, the will executed by the testatrix on July 23, 1992 is found to be invalid.
The appeal of Ernest J. Cockayne is denied.
Judgment is to enter for the defendant, together with court costs.
Julius J. Kremski, Judge Trial Referee